We move to the last case this morning, Prill v. Kijakazi. Good morning, Your Honors. May it please the Court, Meredith Marcus on behalf of the appellant Debra Prill. Ms. Prill was a 55-year-old obese woman with two knee surgeries and chronic neck and back pain at the time she both alleged she became disabled for disability insurance purposes and retired from her 30-year career as a highway maintenance worker. Now, leading up to her retirement, Prill suffered from a number of work injuries and her record reflects that not only did she work through these injuries, but at times she asked for modifications to get back to work even quicker. However, the judge actually recognizes her exceptional work ethic in the decision. However, the judge doesn't afford Prill the same deference when it comes to how Prill ceased work. In fact, despite intermittent references to Prill being placed on light duty work and her testimony under oath that she was receiving accommodations and her supervisor had shipped her off to a different part of the county where she was able to lie down throughout the workday, the judge essentially penalizes her work effort and her effort to work beyond her capacity as stated in Dr. Bideau's letter to make it to retirement. Ms. Marcus certainly seems like a very hardworking individual. Why doesn't the gardening undercut the claimed limitations in kneeling, squatting, crouching, etc.? Sure. So in this case, first of all, there's references in the record to the fact, I think it was in her physical therapy records, that she was only able to do this activity for 30 minutes and then she needed to lie down or rest. But also Ms. Prill, and it's important in this case, her burden is different than a younger individual or an individual who's 50 years old. Here she had to establish that she could no longer do medium level work. So she couldn't be on her feet for six hours per day and lifting up to 50 pounds occasionally, so one-third of the workday. And so the fact that she was able to do gardening intermittently, an activity, and then she would go inside and have to lie down or rest, I don't think carries the same weight that it would for a younger individual, someone who is saying, I can't lift 10 pounds, but then trying to establish disability. So in this case, I think that the one area that impacted both how the judge assessed subjective symptom analysis and Dr. Bedoa's opinion, which I think is significant in this case, is how the judge assessed Prill's daily activities. So Prill does take issue with how the judge considered her daily activities, which was contested in the brief, but what's significant here is the administrative law judge attributes any breaks or rest in her activities to being retired and enjoying it. And that type of rationale might hold water in a case where someone is getting treatment and then retires and there's no medical records or treatment thereafter, thereby establishing that it was more attributable to retirement than it was to chronic pain or chronic conditions. But in this case, we have not only objective records after Prill retired showing that she needed to take rest, but we have her subjective statements as well. So in the record we have, for example, she is unable to move some days and needs the hydrocodone barely to be functional, but 8 to 10 days per month, where she is reliant on additional medication just to get by. And then another record at 11-20 where she is now retired, and this has helped some with her ability to manage her days and the pain. In functional reports she completes, she does allege that she conducts daily activities, but she puts into the functional reports that she does so with limitations and with rest. And she also, in physical therapy records, is telling her physical therapist that she's only able to do certain activities for 30 minutes and then needs to take a rest or a break thereafter due to pain and not specifically due to retirement. And then I wanted to turn to Dr. Bedeau's opinion. So the administrative law judge reduces the weight to Dr. Bedeau, in one part because of these activities that Prill performed and due to the fact that she retired. And so Dr. Bedeau limited Prill to lifting up to 25 pounds, which is notably different than the medium-level work, which is 50 pounds occasionally. He also limited her to being on her feet four hours per day and only being able to sit for 30 minutes and then change positions to standing for 30 minutes. So first of all, none of the activities cited in the administrative law judge's decision are inconsistent with Dr. Bedeau's restrictions. None of them show that she's able to function at a higher level than Dr. Bedeau found. So that's significant. And again, based on Prill's age and her prior work history, her burden here is different than it would be for a younger individual in terms of what she needs to show and what the doctor's limitations are. One of the other rationale that the administrative law judge used in this case was, and it was in the commissioner's brief, is that Dr. Bedeau was more persuaded by subjective statements by Prill than objective findings. Now, the cases that address that out of this court, cases like Kettlebotter, are cases where the doctor relied solely on subjective symptoms and there was no objective findings to support it. But here we have, even in the consultative exam that Ms. Prill was sent to, objective MRIs showing disc disease to her lumbar spine and to her knees. And we have the benefit of Dr. Minacci, the independent medical examiner's long history report, showing how long Dr. Bedeau had a relationship with Ms. Prill and how much he oversaw her treatment by way of X-rays, objective findings, sending her for injections. So it's not tantamount to those cases where Dr. Bedeau was just simply guided by Prill's subjective statements. What makes this case unusual is that Dr. Bedeau had wanted to impose limitations and restrictions earlier on, and he was persuaded by Ms. Prill not to impose those restrictions as her workers' compensation treating physician until she had reached retirement. Because we do have a woman here who was working beyond her capacity and beyond her means and, per her own statements to Dr. Bedeau, would have continued to work had it not been for these work injuries. And so the judge here says that there's an inconsistency between what Dr. Bedeau said earlier on in not imposing restrictions and then Dr. Bedeau later prescribing restrictions after Prill had retired. And I think this kind of puts a catch-22 into this case where, of course, there would not be earlier restrictions, of course there's going to be an inconsistency in this case, because despite Dr. Bedeau wanting to impose those restrictions, despite objective deficits in the record by way of reduced range of motion, problems with the cervical and lumbar spine for which Dr. Bedeau was sending Ms. Prill for treatment, there were no restrictions because she had asked him not to do so. And finally, in terms of Dr. Bedeau's opinion, the judge finds it inconsistent with the state agency doctor. And in looking at the state agency review, first of all, the state agency does not make any mention of the consultative exam in there that Ms. Prill was sent to, which certainly supports the findings of Dr. Bedeau. But it also misstates the findings of Dr. Bedeau. It states that Dr. Bedeau had limited Prill to light-medium work, and that's simply not the case. Dr. Bedeau had limited Prill to part-time work, and medium work, as I discussed before, would have required Prill to be lifting up to 50 pounds occasionally throughout the workday. So the equivalent of essentially six gallons of water throughout the workday. And if there's no further questions, I'll reserve the remainder of my time. Thank you, Counselor. Thank you. Mr. Leavitt? Good morning. David Leavitt on behalf of the Commissioner. May it please the Court. This Court has repeatedly recognized that when an ALJ is supported by evidence, the ALJ's decision is affirmed, even if another fact finder might have reached different conclusions. Here, the ALJ was faced with a claimant whose own treating physician twice indicated that she was available for unrestricted activity, where two doctors who examined her indicated no disabling limitations, and where a state agency medical consultant opined that she could perform a restricted range of medium work. That was substantial evidence supporting the ALJ's decision, and therefore the ALJ's decision should be affirmed. But the ALJ did not only discuss those medical opinions. In her 21-page decision, the ALJ also noted other factors that supported finding of not disabled, such as generally conservative treatment, objective evidence, and the timing of Ms. Prill's claim for disability. In terms of the treatment for Ms. Prill's spinal and knee issues, it consisted of orthotics, medication, and when she attended, physical therapy. Surgery was not recommended during the period under consideration by the ALJ. While there was some indication that surgery might be required in the future or recommended in the future, that would have been during a period not before the ALJ and not before this Court. The ALJ also looked to the objective evidence to be sure the ALJ noted that there was evidence of pain and that there were some abnormalities on examination which warranted restrictions, which the ALJ provided. However, there was other objective evidence, such as normal gait, normal heel-toe walking, where she was able to put her heels in front of her toes, and intact sensation, and normal reflexes, walking on tiptoes. That objective evidence supported a finding that Ms. Prill was capable of a restricted range of medium work. Furthermore, Ms. Prill had been reporting, and there was evidence of pain back to 1998, that's 16 years before she allegedly became disabled. And even with those observations on examination for those 16 years, she was capable of performing heavy work, a much higher level of work than the ALJ found her capable of performing. Mr. Leavitt, the ALJ relies heavily on Dr. Chan and Dr. Chan's opinion. There is some evidence in the record concerning degenerative changes in the cervical, spine, and lumbar region. Is there a place in Dr. Chan's report where he analyzed whether Prill should be assessed any back-related restrictions, or does Dr. Chan skip over that? I believe Dr. Chan discusses degenerative disc disease. Okay. So Dr. Chan was certainly aware of that. And then the other examiners, Dr. Monacci, went to discuss back, you know, spinal issues as well, and he found no permanent restrictions. So the ALJ was supported by both Dr. Chan and Dr. Monacci with regards to the back. The ALJ also looked to the timing of Ms. Prill's disability claim. She was performing, again, a heavy job right before she allegedly became disabled. You know, this contrast with Ms. Prill's allegations, which were that her legs went numb after driving only nine miles, that she was unable to stand even occasionally during the day, and yet she was immediately, before she allegedly became disabled, going and performing a heavy job. Now, the ALJ did not find that Ms. Prill could perform this heavy job, but she could perform a slightly, a little bit less exertionally demanding job of one of a limited range of medium work. And Ms. Prill alleges that she was not really performing heavy work necessarily, but she was put on light-duty work. But even if the court was to take Ms. Prill out of her word on that, that's still well in excess of what she alleged at her administrative hearing. Again, the inability to stand even occasionally during the day. And as I mentioned earlier, the ALJ looked at the medical opinions, and the ALJ here was faced with a not uncommon situation in cases before this court. There were conflicting medical opinions. Because they were supported by the evidence, the ALJ gave way to examining physicians Dr. Monacci and Colwicky and state agency medical consultant Dr. Chan. But the ALJ reasonably gave less weight to treating physician Dr. Bedot and examining physician Dr. Morozova. In terms of Dr. Bedot, while he indicated on a workman's compensation form that Ms. Prill was greatly limited, he indicated in his own treatment notes in periods after Ms. Prill allegedly became disabled that she was retired and available for unrestricted activity. It was reasonable for the ALJ to look at the disconnect between Dr. Bedot's treatment notes and his indication on the worker's compensation form. Furthermore, Dr. Bedot's restrictions were inconsistent with the objective evidence. Similarly, Dr. Morozova's opinion was inconsistent with the objective evidence, including the many normal observations at her own examination of Ms. Prill. And there were indications that Dr. Morozova had based her opinion upon Ms. Prill's own statements, taking them and inserting them into her opinion as she seems to quote from Ms. Prill when giving restrictions. So the ALJ here was supported by multiple medical opinions, generally conservative treatments, the objective evidence, and the timing of Ms. Prill's claim. So if the court doesn't have any further questions... I believe so. The commissioner respectfully requests that the court affirm her decision. Thank you, counsel. So I want to turn first to Dr. Chan because that was an issue brought up. So at the record at 101, it's mentioned in the summary of the record that he finds that the lumbar spine issues would not prevent Prill from returning to and sustaining substantial gainful activity. And Dr. Chan, the state agency's doctor, also predates or does not address the consultative examination where the two x-rays were taken and one of the x-rays significantly shows the disc disease to the lumbar spine. And so in cases like this Marino and Lambert where there's this additional evidence that perhaps would have changed the opinion of a state agency doctor, the courts have remanded for consideration of an updated medical opinion. With respect to Dr. Minacci and the other doctor that Ms. Prill was sent to, I think there's a fundamental difference between the independent medical examiners who are trying to impose permanent restrictions from a workers' compensation perspective versus the consultative examination that an individual is sent to for Social Security purposes. And so in this case, neither doctor imposed restrictions from a workers' compensation standpoint versus the all-inclusive physical examination of the consultative examiner. And finally, with respect to the conservative treatment and care, while it's uncontested there's no surgery in this case, here we have a case of a woman who was taking tramadol and gabapentin on a regular basis and then 8 to 10 days per month, even after retirement, having these severe days where she's taking hydrocodone on top of it simply to function. And cases in this court like Skomas have found that such treatment is not necessarily conservative. Thank you, Your Honors. Thank you, counsel. Thanks to both counsel. The case will take another under advisement and the court will be in recess. Thank you.